O’Neill,, J.*
*274] This case for the first time presents to this Court * J the question, how far it can interfere to prevent the negotiation by an executor or administrator, of notes or bonds taken by him for the 'proceeds of the sale of the 'goods of the deceased.
*213 In such choses in action he has a clear legal right of property, independent of his character as exeeutor or administrator. For at his death they do not, by operation of law, pass to the administrator de bonis non of the testator or first intestate, but are, in point of law, the property of the deceased executor or administrator, and his administrator can alone maintain an action for their recovery. Seabrook ads. Williams, 3 M’C. 371. It is true that the proceeds of such choses in action are in Equity regarded as assets, and will be so treated and considered in the hands of the executor or administrator to whom they were made payable, or any of his immediate representatives. Miller v. Alexander, 1 Hill’s Ch. Rep. 25; Capehart and wife v. The Administrators of Huey. — 1 Hill’s Ch. Rep. 405. So, too, in all such cases, they would be protected from being made liable by the process of law, for athe debts of the executor or administrator. — Glass v. Baxter, 4 Sep. 154; Tolbert v. Harrison, 1 Bail. 599; and in all cases of fraudulent alienations, the Court would follow and' treat them as assets of the estate. But beyond this I am not prepared to go. For generally speaking, an alienee would have a clear legal estate in the chose in action to which, (unless it can be overreached by a superior equity, or be shown to be defeated by fraud;) a Court of Equity as well as a Court of law, is bound to give effect. If the equity of the alienee and that of the creditor, legatee or distributee, be equal, the legal estate must prevail. I have looked through the cases referred to in the decree and in the argument with as much care as I could, and I concede that they sustain the position tliat an alienation by an executor or administrator of chattels or choses in action belonging to the testator or intestate, in his lifetime, for the payment of the debt of the executor or administrator, would not in Equity generally be allowed to prevail against creditors, legatees or distributees — Scott v. Tyler, 2 B. C. R. 431; Andrew v. Wrigley, 4 B. C. R. 124; Bonney v. Ridgard, 1 Cox’s Ch. Rip. 145; Hill v. Simpson, 7 Ves. 152; M’Leod v. Drummond, 14 ves. 352, and 17 Ves. 152; Field v. Schieflin, 7 John. Ch. Rep. 150; Saxon v. Barksdale, 4 Eq. Rep. 522. All of these cases, in'wliieh relief was granted against alienations by an exeeutor or administrator in payment of his own debt, or in which the *Court thought that the party on that ground was entitled to relief, but denied it on some *-' ‘ other, such as lapse of time, (except Field v. Schieflin,) were cases of alienations of chattels belonging to the deceased in his lifetime. The case of Field v. Schieflin was an alienation by a guardian of a bond executed to him as guardian. The Chancellor, without adverting to the distinction, which, I think, exists between alienations of chattels, or choses in action belonging to the deceased in his lifetime, and such as are acquired by the executor or administrator with, or which are given to him for, the proceeds of the estate, gave relief.
Would it be allowed in England, if it could be shown that the money received for a chattel aliened by the executor had been vested in bonds or stock, and these had been aliened in payment of the executor’s own debt, that these last should be followed into the hands of the purchaser, and his legal title be defeated 1 That no such case is found in the English books is strong evidence that such a case is regarded as too desperate of even a chance of success to be presented to a Court The sale of the .testator’s or intestate’s goods and chattels, is made according to law, *214 ends the equitable rights of the creditor, legatee or distributee, to be paid out of them. The proceeds are at law, as we have already seen the executor’s or administrator’s property; so, too, it must be conceded, are the goods, chattels and credits of the deceased generally. At law, prior to the Act of 1824, he had no absolute right of disposition, and where the will directs a sale, he still has that right. Jones v. McNeill, 1 Hill, 84. But to some extent, the goods and chattels, of which the deceased died possessed, are still regarded as not the absolute property of the executor or administrator : in a contest between an execution creditor of *27 6] the deceased and of the executor or administrator, the goods would be held liable to the former and not the latter. Jones v. McNeill, 1 Hill, 84. Such a distinction could not, however, be made in favor of a creditor of the deceased, in a contest at law for payment out of the proceeds of choses in action, payable to the executor or administrator. When the goods and chattels of the deceased are sold, or his choses in action collected, the liability of the executor or administrator to account for the proceeds to all parties interested, is generally that to which they must look. The right to collect these proceeds is indispensable to the excutor’s or administrator’s now safety. The right to use the fund as his own, is also a necessary ^consequence from his liability to account. For after he sells, he is not charged with the proceeds as he receives the money on the notes or bonds, but with the amount of the sales as cash received. Wright v. Davis, 2 Hill, 560, decided at Columbia, last term. Hpon this sum (the amount of the sale bill) he is chargeable with interest, which shows that he is regarded in contemplation of law as in the use of the money. He cannot be discharged from his liability to account for the proceeds of the sale, but by showing that without any fault of his own he has been unable to make them available. If he was not allowed to alien the notes or bonds taken for the proceeds of the sale, (without any other restriction than it should be done without fraud,) it would subject him to the consequences of general liability, for the proceeds of the sale, without any corresponding advantage. For after he made a sale, and charged himself in the sale bill with the value of the goods, yet he would stand in relation to the proceeds as if they were the goods and chattels and credits of the deceased. Such cannot be the case. If it was, the executor or administrator ought to return to the ordinary, the bonds or notes so by him taken. There is no difference in respect to this question between an administrator or executor ; yet, if it be true that when an administrator transfers the bonds taken by him for the goods of the deceased in payment of his own debt, such transfer would be void, it would follow that his securites for the administration would, as well as creditors, legatees or distributees, have the right to follow the fund; yet, I apprehend, such a consequence ought not generally to be allowed. I have already said that an alienation of the bonds or notes, payable to an executor or administrator, ought not to be over reached or defeated but by a superior equity, or by fraud. In the transfer of a chose in action by a solvent executor or administrator, in payment of his own debt, it would seem to me that the equity of the creditor of the executor or administrator is fully equal, if not superior, to that of the creditor of the testator or intestatate, the legatee or distributee. In such a case, he parts with the precise money value of the thing acquired. *215 For the debt of the solvent executor or administrator, which might have been otherwise collected, is given up. The question is, who, of two innocent persons are to be losers ? It cannot be answered, that he who has the legal interest is to be the man, and yet this would be the case, if the rights of the alienee were defeated. If *the executor or administrator were insolvent, and should transfer the chose in action L "■'< in payment of his own debt, in such a case the equities would not be equal: for there the alienee would have paid nothing, and his legal estate would be over reached by the equity of the creditor, legatee or distributee of the testator or intestate, and the alienee would be turned into a trustee. So, too where there has been a fraudulent alienation, there the fraud defeats the title conveyed, and the alienee holds by a constructive trust for the uses of the creditor, legatee or distributee of the testator or intestate. From these views these plaintiffs are not entitled to recover. The executor, Me Nish, after his testator’s death, legally sold his estate according to the will. The bonds now in controversy were given to him, as executor, for the proceeds of that sale. He was indebted to the defendant as executor of Archibald Longworth, deceased — this debt was secured by a mortgage. In payment and discharge of this debt, he, when solvent, paid and delivered to the defendant, the bonds and notes now in dispute, and thereupon the defendant gave up to him his bond and mortgage and, has subsequently accounted for and paid the amount to the devisees of his testator.
According to this statement, his equity is fully equal, if not superior to that of the plaintiffs, and hence his legal title must prevail.
It is ordered and decreed, that the Circuit decree be reversed, and the plaintiff’s bill dismissed.
Johnson, J., and Evans, J., (sitting for Harper, J.,) concurred.